EDISON ELECTRIC LIGHT CO. et al. v. BUCKEYE ELECTRIC CO. et al.

(Circuit Court, N. D. Ohio, E. D.)

No. 5,142.

1. PATENT SUITS—PRELIMINARY INJUNCTION—ESTOPPEL.
   A patentee, under a misapprehension of the law, secured from the patent office a correction limiting the life of his patent, and was afterwards held to be thereby estopped, as against certain alleged infringers, to deny the validity of the limitation. *Held*, on motion for a preliminary injunction, that certain other persons associated with him in the ownership of rights under the patent were also estopped, in the absence of an affirmative showing that they were ignorant of his acts in procuring the limitation.

2. SAME.
   The fact that the patentee and his associates transferred their rights under the patent to a corporation of which they were the sole stockholders did not affect the operation of the estoppel.

3. SAME—DISCRETION OF COURT—RIGHT OF APPEAL.
   When the court is clearly convinced that complainants are not entitled to an injunction, it will not, except by consent of the parties, allow the injunction to issue, merely upon the suggestion that defendants are entitled to an appeal from such an order, whereas complainants cannot appeal from an order denying an injunction.

This was a suit by the Edison Electric Light Company and the Edison General Electric Company against the Buckeye Electric Company and others to restrain the alleged infringement of letters patent No. 223,898, issued January 27, 1880, to Thomas A. Edison, for an incandescent electric lamp. A preliminary injunction was heretofore dissolved by the court (59 Fed. 691), but a motion for a preliminary injunction has again been made, supported by additional affidavits.

RICKS, District Judge. This case comes again before the court upon a motion for a preliminary injunction. Since the former motion for a dissolution of the injunction allowed in 1893 was passed upon, the plaintiffs have filed additional affidavits in support of the pending motion. Though this motion asks for the order without assigning any reasons, the affidavits disclose new facts which were not brought before the court on the previous application; and, though the plaintiffs did not desire to confine their application to the new facts thus presented, the court sees no reason why, upon this motion, the case should be again considered upon the matters so fully heard, considered, and decided in the opinion heretofore filed. I shall therefore consider only the question as to whether the new facts entitle the plaintiffs to a preliminary injunction. In granting the defendants' motion to dissolve the injunction then in force, the court found that there had been such acts on the part of the plaintiffs, in their application to the patent office to limit the duration of the Edison patent, and in the proceedings connected therewith, and sub-

sequent thereto, and in their negotiations with the defendants relating to the manufacture of lamps claimed to be covered by the patent, as to estop the plaintiffs from claiming, as against these defendants, that their patent did not terminate in November, 1893, or that, as against the defendants, they had a right to such an injunction.

The new facts disclosed by the affidavits are that at the time the owner of the patent and the assignee thereof made their application to the patent office, in October, 1883, asking for a limitation of the life of the patent, and at the time of the proceedings taken under said application, a contract was in force by which the owner of the patent had given the exclusive right to manufacture lamps under the patent to Edison, the patentee, and to certain persons whom the contract stipulated might be associated with him in that undertaking. The contract was made on the 8th day of March, 1881. On the 12th day of January, 1884, Edison and his association named in the contract of March, 1881, assigned and transferred to the Edison Lamp Company, a corporation organized under the laws of New Jersey, all their title and interest in the said contract, and also all their interest in a second contract between the Edison Electric Light Company and the Edison Lamp Company, made October 11, 1883. This right to exclusively manufacture lamps, thus vested in Edison and his associates, was in force when the owner of the patent and Edison joined in the patent office application of October, 1883. The associates of Edison in that exclusive right, it is claimed, were not advised of what Edison and the owner of the patent did with reference to the said proceedings in the patent office, were not bound thereby, and that, so far as their rights in that contract are concerned, they are not now estopped from claiming a preliminary injunction by any acts of the owner of the patent or the patentee. The case is practically, therefore, the application of the holders of this equitable interest in the contract of March, 1881, for a preliminary injunction against the defendants. It has already been decided that the assignee of the patent and the patentee are not entitled to such relief. Those who now ask for the injunction upon the new facts disclosed must show their right to this remedy and relief by the same rules and upon the same principles governing any other applicant for such an order.

What, then, are the facts disclosed as to the legal relations existing between the parties interested with Edison in this contract of March, 1881, and the owner of the patent and the patentee, and what was the information they had of the proceedings instituted in the patent office in October, 1883, by which their interest and rights in their existing contract were affected? The contract of March, 1881, between the assignee and owner of the patent and Edison, is an exceptional instrument. It confers upon Edison very valuable rights, coupled with very liberal conditions, and every provision contains terms showing it was not intended to be assignable. It was a contract showing in every line an intention to confer upon Edison, personally, the liberal and flexible conditions stated. The persons whom he was authorized to associate with him in the undertaking contemplated in the contract were his associates in his laboratory experiments, and closely interested with him in the success of his patents. It is important

to keep in mind these relations in considering how far they are justly bound by Edison's participation in the patent office proceedings of October, 1883. It is not now necessary to determine whether in their association under the contract of March, 1881, they were partners or not. We are not informed of the exact nature of their legal relations further than they are disclosed by the terms of that contract and by their affidavit. They were associated in that enterprise under such relations as makes it difficult to believe that they were for any great length of time ignorant of the patent office proceedings of October, 1883, and of Edison's participation therein. It is true that in their affidavits they each deny that Edison was authorized to act for them in joining in that application, and with varying explicitness each denies that he knew of such act of Edison's at the time. I accept these statements as true, but they are not inconsistent with the contention made by the defendants that, because of their intimate association in the enterprise, they must have learned of that proceeding soon after it took place, and that they have since ratified the act of their associate in different ways. And for the purposes of this preliminary hearing, when the granting of this application rests so largely in the discretion of the court, reasonable inferences and conclusions, based upon the facts as imperfectly disclosed in ex parte affidavits, are proper to be considered. . Having already found that Edison is not entitled to this injunction, have his associates in that contract so clearly shown that they have been ignorant of the successive acts and of the conduct of their patentee, which have estopped him, as not to be precluded from claiming this relief as against the defendants? The burden is upon them to establish such want of knowledge and such conduct on their part as to entitle them to this extraordinary relief. If they considered their interest in the contract of 1881 as valuable from October, 1883, to March, 1893, as they now do, they were bound to protect it by such acts and conduct as not to mislead those dealing with this patent, and with its inventor and owner. With the certificate of correction attached to every copy of the Edison patent issued between October, 1883, and March, 1893, and with the concern that existed as to the effect of the patent office proceedings upon all interested in the patent, it seems highly improbable that during all that period these associates of Edison remained in ignorance of what had been done. If they were so innocent and ignorant during that time, it ought to so affirmatively appear, for it is the fact most important, in view of the decision of the court dissolving plaintiffs' injunction allowed upon the original hearing. Having failed to make this full and explicit denial, I am warranted, in view of all the facts, in concluding that these associates of Edison did acquire the knowledge of this patent office proceeding during the period named.

Edison and his associates transferred their title and interest in the contract of March, 1881, to the Edison Lamp Company in January, 1884. They were the sole stockholders, and the only parties interested in the new corporation. It was the same parties associated in the same enterprise under corporate name. They changed their legal relations, and took their new title to ownership charged with

all the knowledge, and burdened with the same duties as to third persons, that rested upon them as "associates" under the contract of March, 1881. Having knowledge of the part taken by their associate, Edison, in the patent office proceeding, they were charged with the knowledge of its legal effect on their rights under the contract of 1881, and they were charged with the duty of protecting them by their subsequent acts and conduct. While Edison estopped himself from claiming an injunction by his acts and conduct between October, 1883, and March, 1893, as found in the decision heretofore referred to, it does not follow that his associates were likewise estopped. But in this hearing it ought affirmatively to appear that these parties, who claim a prior equity to the defendants, were ignorant of, and did not participate in or authorize, the several acts and the line of conduct which it has been held estopped the other plaintiffs from claiming relief against these defendants. This should appear so satisfactory as to justify the court in granting this unusual relief. The burden is not on the defendants to show that this injunction should not issue, but it is on the plaintiffs, who claim a prior and superior equity, not affected by the estoppel heretofore found to preclude their associate plaintiffs, to show that it should issue; and this must be shown by the required degree of certainty. I do not think this has been done.

In 1892, the plaintiffs who now join in this suit instituted a suit upon this same patent against the Sawyer-Mann Electric Company. This was at a time when the certificate of correction was still supposed to be in force, and was a ratification of that correction, so far as the licensees were concerned. They then believed the proceedings for correction had been valid and effective, and accepted and adopted the beneficent results they supposed followed. But it has been suggested, inasmuch as the complainants cannot appeal from an order refusing an injunction, while the defendants can appeal from an order allowing one, that the court allow a preliminary injunction, but suspend its operation pending appellate proceedings. By such an order, it is urged, the plaintiffs may have partial relief, and no great hardship be imposed upon the defendants. I would be very glad indeed to have such an agreement made, so that this case might be speedily reviewed. I fully appreciate the disadvantages under which the plaintiffs stand because of the peculiar situation of these litigants, but I have no right to impose upon the defendants the burden and expense of prosecuting an appeal from an order allowing an injunction to which I have found the plaintiffs are not entitled. Such an order might properly be made where the parties assent, or there might be such a condition of proof, and such peculiar circumstances present themselves in a case, as would warrant the court in making such an order as plaintiffs suggest. The discretion exercised by courts in acting upon motions for injunctions is very great, and each case must be decided upon the facts and circumstances presented; and a proper one might arise for such a departure from the ordinary practice, but I do not find this to be such a case. The motion for a preliminary injunction is therefore refused.