EDISON ELECTRIC LIGHT CO. et al. v. UNIVERSAL ELECTRIC CO. et al.

(Circuit Court, N. D. Ohio, E. D. March 13, 1894.)

PATENTS—INFRINGEMENT—PRELIMINARY INJUNCTION.

A corporation which was organized to manufacture an infringing article after the patent had been sustained by a circuit court cannot procure the dissolution of a preliminary injunction on the ground that an appeal had been taken, and that its officers believed the patent to be invalid; nor is its position bettered by the allegation that it afterwards made additional investments in the business, relying upon the validity of a correction limiting the life of the patent (which correction the patentee had procured under a misapprehension of the law), where it appears that such investments were made after the patentee had revoked the limitation. Edison Electric Light Co. v. Buckeye Electric Co., 59 Fed. 691, distinguished.

This was a suit by the Edison Electric Light Company and others against the Universal Electric Company and others to restrain the infringement of incandescent electric light patent. Defendants moved to dissolve a preliminary injunction.

RICKS, District Judge. On September 15, 1893, a restraining order was issued in this case, speedily followed by a preliminary injunction, restraining the defendant from manufacturing incandescent lamps described and covered by the Edison patent, No. 223,898, granted January 27, 1880. That order has ever since remained in force. On February 9, 1894, the defendant filed its motion asking for an order dissolving said injunction, because the complainants, by a certain proceeding in the patent office, instituted in December, 1883, and conducted by the patentee and his assignee, the time of his original patent was, upon their own application, limited so as to expire November 10, 1893, and that because of said proceedings, and of the action of the commissioner of patents thereon, said patent did expire on November 10, 1893. Said motion further recited certain facts connected with the organization and business operations of the defendant, and particularly with reference to increased expenditures made in the spring of 1893, which are relied on to show that the defendant was so misled by the conduct and acts of the complainants with reference to said proceedings in the patent office as to estop said complainants from now claiming that said patent did not expire in November, 1893, and that for the two reasons stated the injunction now in force should be dissolved. It is conceded by the defendant's counsel that this motion is as close a copy of the similar motion filed by the defendant in the case of the complainants against the Buckeye Electric Company, recently passed upon by the court (64 Fed. 225), as the facts of the defendant's case will permit, and that the reasons for asking for a dissolution of the in-

junction in this case are the reasons upon which the motion was allowed in the Buckeye Case, so far as the same are applicable to the facts set forth in defendant's motion and in the affidavits in support thereof. So that, in considering this motion, frequent reference will be made to that case, and it will be identified as the "Buckeye Case."

The facts relied upon in this case to entitle the defendant to a dissolution of the injunction are taken from affidavits, original and supplemental, of N. S. Possons, the president and general manager of the defendant. They are more specific than those set out in the motion. Mr. Possons, in substance, says that the defendant company was incorporated on the 29th day of August, 1892, for the purpose of manufacturing electrical appliances, with an authorized capital of $25,000, and an actual investment of .$12,000, and that the persons who invested in said enterprise were induced to do so by the belief that the manufacture of incandescent lamps was lucrative, and not an infringement. Affiant says that owing to the decision of Mr. Justice Bradley, on the circuit, in the Sawyer & Man Case,[1] it was generally believed that the manufacture of incandescent lamps was open to the world. Affiant says that the similarity of the claims 1 and 2 of the Edison patent and claims 2 and 3 of the Sawyer-Man patent—the latter of which, Mr. Justice Bradley said, did not describe an incandescent electrical lamp, as then and now made—induced most people interested in that business to conclude that the Edison patent was invalid. Affiant further says that many other manufacturers were engaged in making the lamps, naming several of the firms having the largest output. Affiant says that when the defendants made their investment the decisions of the court were as above stated, and that they had every reason to believe they were not infringers, and that they acted in the utmost good faith. Affiant says that during the fall and winter of 1892 it began the manufacture of the lamps containing a silk filament; but during the spring of 1893 the company, believing that the Edison patent would expire on the 10th of November, 1893, at great expense caused investigation to be made to discover, if possible, a more satisfactory substance to use as a filament, and on or about April, 1893, did make such discovery. A short experience demonstrated the superiority of such filament, and thereafter, on or about May 1, 1893, the directors of the defendant held a meeting to consider the advisability of increasing the facilities of said company to manufacture incandescent lamps, so that they might be placed on the market in large quantities after the expiration of the complainants' patent in November, 1893, as limited by the application and correction of December, 1883. Affiant says that at the May meeting, after full discussion, it was decided to increase its producing capacity, and that thereafter some $10,000 was expended "in perfecting said filament, in purchasing tools, machinery, appliances, etc., and that said expenditure was made relying upon the belief that said patent No. 223,898 would

[1] 40 Fed. 21.

expire and terminate on November 10, 1893, and that, but for that belief, said expenditure would not have been made." Possons' original affidavit, p. 7. Affiant says he advised his associate directors that eminent counsel, consulted by him, advised him that the Edison patent would expire, with the British patent, in November, 1893, and affiant says that upon the facts so ascertained, and opinion so given, "large additional investments were made by the stockholders to the capital stock of said company, to wit, upwards of the sum of $9,000, which was subscribed and invested during the months of December, 1892, and January, 1893." Affiant says that he is informed and believes that, before the defendant organized as a corporation, the second claim of the Edison patent had been sustained by Judge Wallace;[2] that he and his associates had been advised that this decision had been at once appealed from; and the defendant company, having been organized, engaged in the manufacture of said lamps pending said appeal, and continued increasing its investments upon the faith of the invalidity of said patent, and its expiration in 1893. Upon learning of the affirmation of said decision of Judge Wallace,[3] it discontinued, and did not manufacture until Judge Hallet refused an injunction, application for which was made before him, against a defendant in his district, when it again manufactured until Judge Seaman's decision in the Oconto Case,[4] when it closed, and was so closed at the time the restraining order was issued in this case. Affiant avers good faith in the acts and conduct of the defendant; that all its tools purchased for the manufacture of said lamps, and all the appliances connected with its works, would be valueless unless it is allowed to proceed in the business for which it was organized.

These are, briefly stated, the facts upon which the defendant's motion for a dissolution of the injunction are based. In what respect do these facts differ from those which the court found in the Buckeye Case to be sufficient to estop the complainants from claiming that the Edison patent did not expire by their own limitation put upon it in November, 1893? In the Buckeye Case, the defendant company was organized in February, 1890, with an authorized capital of $100,000, and with an investment at the time of $25,000. Mr. Justice Bradley had then decided the Sawyer-Man patent invalid, and the belief was general, and had substantial foundation, that the Edison patent would be likewise held invalid. At the time of its organization, and in the early stages of its business, there has been no adjudication showing the Edison patent valid. About the time the said company began business, it had learned through counsel, from an examination of the patent office, that the patentee and assignee of the Edison patent, No. 223,898, had voluntarily gone into the patent office, surrendered the letters patent, and asked to have it so corrected that it should expire by limitation on the 10th of November, 1893. The company, having, at about the same time, discovered a new and superior filament, determined upon increasing the capacity of its works, and did so to the extent

[2] 47 Fed. 454.     [3] 3 C. C. A. 33, 52 Fed. 300.     [4] 57 Fed. 616.

of many thousands of dollars; and this was done before there had been any adjudication sustaining the patent, and while the patentee and his assignee had so, as aforesaid, limited the patent so that it expired in November, 1893. Said defendant averred that, in good faith, it relied upon such acts and conduct of the parties owning and controlling said patent. The motion, and the proofs in support thereof, in that case, further showed that for some months negotiations were had between the complainants and the said defendant looking to a consolidation of the companies, or a sale, by the defendant to the complainants, of their manufacturing plant; and at the same time a substantial acquiescence by the complainants in the defendant's infringement was fairly inferable from its acts and conduct. The facts in that case further disclosed that the investments of said defendant had been largely increased upon the faith of the complainants' voluntary limitation of their patent to November, 1893, and before the revocation of such action in March, 1893, was attempted or undertaken. So that, in the Buckeye Case, if we keep in view the negotiations for the purchase and sale of the defendant's works that had been going on between the parties, together with the acquiescence by the complainants in its manufacture and sale of lamps, even after Judge Wallace's decision in July, 1891, it is manifest that said Buckeye Company was not at any time a willful infringer. It came into a court of equity asking equity, and averring with great explicitness that it had done equity. It was not only not a willful infringer, but it had made all its original and additional investments in good faith, before the decision of the circuit court of appeals, in October, 1892, affirming the prior decision of Judge Wallace, to which reference has already been made, and before any attempted revocation of the limitation of the Edison patent had been made.

In the case now under consideration, the Universal Electric Company was organized in August, 1892. Judge Wallace's decision affirming the validity of the Edison patent had been promulgated over a year prior to the date of its organization, and only a few months after its organization that decision was affirmed by the United States circuit court of appeals for the Second circuit. So that, although an appeal had been taken from Judge Wallace's decision at the time the defendant organized, it began the manufacture of an infringing lamp after the patent had been declared valid by a circuit judge of high authority. It was hardly more than in operation when that decision was affirmed by the court of last resort for such cases. Its increased investments set out in its motion and affidavits seem to have been a $9,000 increase made in December, 1892, and January, 1893, and an additional increase of $10,000 made after the meeting of the directors of the defendant company in May, 1893. The proof is not clear or satisfactory on this point, but giving to the defendant the benefit of the facts averred in its motion, and in the affidavit and supplemental affidavit of Mr. Possons, we give the conclusions as above stated. See Possons' original affidavit, p. 7. The last investment of $10,000 was therefore made after the complainants' attempted revocation, in March, 1893,

of the proceedings of December, 1883. The court in the Buckeye Case found that the defendant acted in good faith, and relied on the acts and conduct of the complainants in limiting the Edison patent, and that its investments were increased in good faith, relying upon that act, and that all of them were made by it before the revocation of March, 1893, and that the defendant was therefore not affected by said revocation.

In the Buckeye Case, while the court declined to say just what rights the public acquired as against the owner and assignee of the Edison patent by virtue of the voluntary limitation put upon its life by the patent office proceedings of December, 1883, it did find that the Buckeye Company acquired rights by virtue of the complainants' conduct and acts in connection with such proceedings, and that, as to the Buckeye Company, the attempted revocation of March, 1893, was of no effect, because the Buckeye Company had made all its investments and business arrangements prior to such revocation, and thereby acquired vested rights which could not be disturbed. But, in the case now under consideration, the defendants, unfortunately for them, occupy no such favorable attitude. They began business as an infringer, and, of their two additional investments (if two were made), the last was certainly made after the revocation of March, 1893. They were bound to take notice of these proceedings in the patent office, and, as to parties who had not acted in good faith upon the limitation of the patent made by the proceedings of December, 1883, and had not acquired vested rights before the revocation thereof, said revocation was certainly effective.

In another important respect this case differs from the Buckeye Case. In the latter case the court concluded that if the facts set forth in the defendant's motion, and the affidavits in support thereof, had been an available defense to it upon the original application for an injunction, the court would not have allowed an injunction, as against the Buckeye Company, upon the showing which the complainants could then have made. But would such a conclusion be just in this case? Suppose the complainants were now here asking for an injunction upon the strength of this patent, adjudicated to be valid by the highest court having authority to pass upon those questions. What defense could the defendant interpose by way of opposition to such injunction? The defendant would come into court and say the injunction ought not to be allowed as against it because it organized and began its business after the decision of Judge Wallace, in 1891, and because it had made additional investments relying upon the complainants' limitation of their patent by the patent office proceedings of December, 1883. To this claim the reply on the part of the complainants would naturally be that the defendant was an infringer when it began business, and made its additional investments after the complainant had recalled or revoked its dedication or grant of 1883, and that said revocation was known to the defendant, or ought to have been known to it from the records of the patent office, before it had made its additional investments. Would such a defense be

effectual to prevent the allowing of an injunction? I think not. The defendant would not be showing any such conduct or acts on the part of the complainant as estopped it from claiming the benefit of its revocation of March, 1893, as the Buckeye Company could have done in its case. For these reasons, I do not think the defendant has made a case entitling it to dissolution of the injunction now in force.

Having decided the case upon the facts, and for the reasons, hereinbefore stated, it does not become necessary to notice the further contentions made on behalf of the complainants: (1) That the proceedings in the patent office of December, 1893, were entirely void for want of jurisdiction of that office, and that therefore the record made by the office in those proceedings was not a record of which the public were obliged to take notice, and could not be operative either upon the complainants or upon anyone claiming rights thereunder by reason of the complainants' conduct. (2) That the proceedings in the patent office of December, 1883, were not binding upon one of the complainants in this case, to wit, the Edison General Electric Company, because, at the time said proceedings were instituted, the said the Edison General Electric Company had a license from the patentee and his assignee to manufacture under said patent, which license ran to said company and certain other associates named, and that they could not be influenced or affected by such proceedings in the patent office, of which they had no notice, and that the interest of the Edison General Electric Company was acquired by it from the owners of the patent prior to any investments made by the defendant in this case.

Both of these propositions, pressed with great earnestness by the learned counsel, might be of very great importance in connection with the case if presented in a different phase; but, as before said, it is now not necessary to consider them in connection with the decision based upon the facts as hereinbefore stated. The motion to dissolve the injunction is therefore disallowed.