ELECTRIC MANUF'G CO. et al. v. EDISON ELECTRIC LIGHT CO. et al.

(Circuit Court of Appeals, Seventh Circuit. May 1, 1894.)

No. 135.

1. PATENTS FOR INVENTIONS—ACTION FOR INFRINGEMENT—INJUNCTION.
    Where a patent has been sustained after protracted and expensive litigation, the right of the owner to a preliminary injunction against a new infringer can be defeated only by a new defense, which is sustained by such convincing proof as to raise a presumption that it would have defeated the patent if produced at the original trial, and every reasonable doubt should be resolved against the new defense. 57 Fed. 616, affirmed.

2. SAME—ELECTRIC LIGHTS.
    On a motion for a preliminary injunction against the infringement of letters patent No. 223,898, issued January 27, 1880, to Thomas A. Edison, for an improved electric lamp, there were ex parte proofs of an alleged anticipation by Henry Goebel in 1854, and subsequently. Held, that these were insufficient to overcome the effect of the adjudications sustaining the patent, because of the improbability of Goebel's making so important a discovery without its becoming generally known, and without his obtaining a patent for it. 57 Fed. 616, affirmed.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

Suit by the Edison Electric Light Company and the Edison General Electric Company against the Electric Manufacturing Company, T. A. Pamperin, Julius B. Grunert, and George Beyer to restrain the infringement of a patent. Defendants appeal from an order granting a preliminary injunction.

The appellees filed their bill in the court below to restrain the infringement by the appellants here of the second claim of letters patent No. 223,898, issued to Thomas A. Edison, January 27, 1880, for improvements in electric lamps, which claim is as follows: "The combination of carbon filaments with a receiver made entirely of glass, and conductors passing through the glass, and from which receiver the air is exhausted, for the purposes set forth." By the original answer, the defendants below conceded that they had infringed the second claim as it had been construed by the courts, but afterwards, by amendment, denied infringement, substantially upon the ground that, by the proper and narrower construction which they insisted should be given to the claim by reason of the prior state of the art, founded upon an alleged prior invention by one Goebel, not considered in the prior litigation, the defendants' lamp should not be construed as infringing upon the patented rights of the appellees. The patent itself was also attacked upon the ground of the alleged prior invention of Goebel. The court below, upon a hearing, granted an injunction pendente lite, from which order this appeal is prosecuted. The case below is reported in 57 Fed. 616, where the facts are sufficiently stated for the disposition of the case here.

W. H. Webster (Wm. H. Kenyon, John J. Herrick, Allan D. Kenyon, and A. P. Smith, of counsel), for appellants.

H. G. Underwood (C. E. Mitchell, F. P. Fish, R. N. Dyer, and D. H. Driscoll, of counsel), for appellees.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge (after stating the facts). The question presented by this appeal involves the proper rule for the guidance of the court in allowing a preliminary injunction where there has been previous protracted and expensive litigation, resulting in the establishment of the validity of the patent, but where the present alleged anticipation of the invention had not been considered. The patent in question was sustained in Consolidated Electric Light Co. v. McKeesport Light Co., 40 Fed. 21, and in Edison Electric Light Co. v. U. S. Electric Lighting Co., 47 Fed. 454, which latter case was affirmed upon appeal in the second circuit (11 U. S. App. 1, 3 C. C. A. 83, and 52 Fed. 300), and followed in Edison Electric Light Co. v. Sawyer-Man Electric Co., 11 U. S. App. 712, 3 C. C. A. 605, and 53 Fed. 592. In these cases, however, the alleged prior invention of Goebel was not asserted or considered.

The alleged anticipation by Goebel seems first to have been presented in the case of Edison Electric Light Co. v. Beacon Vacuum Pump & Electrical Co., 54 Fed. 678, in which case Judge Colt, upon motion for preliminary injunction, asserted the rule that where the validity of a patent has been sustained by prior adjudication, and especially after a long, arduous, and expensive litigation, the only question open upon motion for a preliminary injunction, in a subsequent suit against another defendant, is the question of infringement, the consideration of other defenses being postponed until final hearing; the only exception to the rule being where the new evidence is of such a conclusive character that, if it had been introduced in the former case, it probably would have led to a different conclusion. And in such case the burden is upon the defendant to establish this, and every reasonable doubt must be resolved against him. This rule was substantially approved by the learned judge whose decision is before us for review. Judge Hallett, in a similar case (Edison Electric Light Co. v. Columbia Incandescent Lamp Co., 56 Fed. 496), held to a different rule, substantially to the effect that in such case, as in one where there had been no adjudication, the complainant must show a clear right in support of a preliminary writ, and a defense which puts his case in doubt is sufficient to defeat the application. We have held in Standard Elevator Co. v. Crane Elevator Co., 9 U. S. App. ——, 6 C. C. A. 100, and 56 Fed. 718, that, in the absence of prior adjudication or public acquiescence, a preliminary injunction should not be granted unless the rights of the patentee be clear, and the infringement be without reasonable doubt. As applied to the case of a patent that had not passed judicial scrutiny, we declared the rule asserted by Judge Hallett. Where, however, the patent has been strenuously contested, and its validity determined by a competent tribunal, we think a strong presumption arises in favor of the patent which im-

poses upon the contestant the burden of attack. Of course such prior adjudication does not conclude the question of right, even as to the defenses passed upon, except as between parties and privies. Such a judgment is not within the principle of res judicata. It is effective, however, to impress upon the patent such additional presumption of validity that demands of a contestant a quantum and force of evidence, beyond that passed upon in the prior adjudication, sufficient to convince the court of the probability that, had such further evidence been presented and considered upon the former hearing, a different result would have been reached. In other words, in such case the patentee may rightfully rest upon his patented right confirmed to him by the solemn adjudication of a competent judicial tribunal. He who attacks that right must overcome the legal presumption of right in the patentee. The strength of that presumption is variant, depending upon the circumstances surrounding the adjudication relied upon to support it. It is stronger when rested upon a final hearing than upon a motion for a preliminary injunction. Its potential force is intensified by the affirmance by an appellate tribunal of the adjudication in favor of the patent. The extent of the burden of overcoming the presumption is therefore measured by the degree of effective force imputed to the presumption. Where anticipation of invention has been asserted and determined to be unfounded, the presumption would be much stronger against cumulative evidence to prove anticipation by the one whose claim had been repudiated than where anticipation is asserted in behalf of some other supposed inventor, whose claim was not in contention in the case adjudicated; and yet, in the latter instance, in addition to the presumption attaching to the patent itself, there would arise a further presumption, more or less strong, and depending upon the circumstances, that, as the issue was the invalidity of the patent because of anticipation, bona fide contestants, earnestly striving to undermine the patent, would have asserted the defense, if known to them and deemed substantial. It may be difficult to formulate a rule that will comprehend all the conditions which could be presented, but we think it safe to say that in general, where the validity of a patent has been sustained by prior adjudication upon final hearing, and after bona fide and strenuous contest, the matter of its validity upon motion for preliminary injunction is no longer at issue, all defense, except that of infringement, being reserved to the final hearing; subject, however, to the single exception that, where a new defense is interposed, the evidence to support it must be so cogent and persuasive as to impress the court with the conviction that, if it had been presented and considered in the former case, it would probably have availed to a contrary conclusion. In the consideration of such new defense of anticipation, regard should be had to the rule that such a defense is an affirmative one; that the burden of proof is upon him who asserts it; and that the grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described therein, and of its novelty. Coffin v. Ogden, 18 Wall. 120; Smith v. Vulcanite Co., 93 U. S. 486; Lehnbeuter v. Holthaus, 105

U. S. 94; Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970; Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450. The propriety of this rule is enforced by the consideration that an adjudication in the case of a patent is not only a judgment *inter partes*, but is a judicial construction of a grant by the government, and in a broad sense deals with and determines the rights of the public. A patent is sui generis. By it the public, through its authorized representatives, grants a monopoly for a term of years in consideration of the surrender of the invention to public use upon expiration of the term. When, upon judicial contest, a competent court has sanctioned the grant and determined the right thereunder, the monopoly thereby granted ought not to be permitted to be invaded except upon a clear showing that the decision invoked in its favor was wrong. It is true that the prior adjudication does not deal with the supposed new defense, and does not affect the merits of that defense upon final hearing; but the fact that it was not presented, especially where the existence of the claim was known to and considered by counsel, is a circumstance to be considered by the court in passing judgment upon the merits upon the hearing for an interlocutory injunction. We are of opinion that the rule was correctly interpreted by the court below, and properly applied to the case in hand.

We are asked to determine the extent to which this court should go in review of an exercise of discretion by the court below in granting a preliminary injunction. There would seem to be some divergence of opinion in the circuit courts of appeals upon this question. The cases of Dudley E. Jones Co. v. Munger, etc., Manuf'g Co., 2 U. S. App. 188, 1 C. C. A. 668, and 50 Fed. 785, in the fifth circuit; Watch Co. v. Robbins, 6 U. S. App. 275, 3 C. C. A. 103, and 52 Fed. 337, and Blount v. Societe Anonyme du Filtre Chamberland Systeme Pasteur, 6 U. S. App. 337, 3 C. C. A. 455, and 53 Fed. 98, in the sixth circuit; Consolidated Electric Storage Co. v. Accumulator Co., 3 U. S. App. 579, 5 C. C. A. 202, and 55 Fed. 485, in the third circuit; American Paper Pail & Box Co. v. National Folding Box & Paper Co., 1 U. S. App. 283, 2 C. C. A. 165, and 51 Fed. 229, in the second circuit; and Davis Electrical Works v. Edison Light Co., 5 U. S. App. 611,[1] 60 Fed. 276, in the first circuit,—are perhaps in antagonism, leading the court of the sixth circuit to certify the question to the supreme court. That court, however, in Watch Co. v. Robbins, 148 U. S. 266, 13 Sup. Ct. 594, held that the fact that courts had reached contradictory results did not under the statute warrant the submission of the question for its decision, but might furnish ground for a certiorari upon proper application. We do not deem it needful at this time to enter that field of discussion, because, assuming the right of the appellate court to review to the fullest extent the decision of the court below, we are satisfied with the correctness of the conclusion reached upon the merits with respect to the issuance of the preliminary injunction.

[1] 8 C. C. A. 615.

It is not essential that we should enter upon an elaborate or studied investigation of the voluminous mass of evidence presented. It might be improper so to do, since possibly the case upon its merits and after final hearing may come up before us for review. We base our conclusion upon grounds not conclusive of the fact of Mr. Goebel's alleged prior invention, but effective in the consideration of the question whether the case presented is so clear and satisfactory that it overcomes the presumptive force which, under the rule adopted, must be conceded to the patent. We are content to rest our conclusion upon two grounds, which, in our judgment, sanction the issuance of this injunction.

The great problem in the art of electric lighting to render it practicable for general use was to discover a method of subdivision of the light. This is claimed to have been solved by Mr. Edison, and to have been publicly declared in 1879, and the invention secured to him by letters patent issued in 1880. For years before, scientific minds the world over were concentrated upon the investigation of electricity and electric lighting. Innumerable experiments and failures marked the pathway to success. The division of light was asserted by some of the most eminent electricians of the day to be an idle dream, and an insoluble problem,—an ignis fatuus, delusive, and unreal. Mr. Edison's invention dispelled the clouds of doubt, and demonstrated the accomplished fact. Mr. Goebel claims to have made this discovery a quarter of a century before, in the year 1854, in the city of New York, and to have made these incandescent electric lights for his own pleasure and amusement, and to have used them for lighting his store, and to light a wagon upon which was mounted a telescope, with which he publicly traversed the streets of that city. As this record is now presented to us, and considering the claim in the light of cotemporaneous history, we find it difficult to give credence to the story. During a quarter of a century, from 1854 to 1880, the scientific world was struggling with the problem, and could not solve it; and yet, if the claim asserted for Mr. Goebel be well founded, it had already been solved, and he had made public demonstration of it in the commercial metropolis of the Union; the scientific world, however, and the public generally, remaining in total ignorance of it. How he could thus hide his light under a bushel passes comprehension. The mind cannot readily yield assent to the assertion of a claim under such circumstances, and when it is supported solely by ex parte evidence. We had occasion in Standard Elevator Co. v. Crane Elevator Co., supra, to make some observations with respect to the weight to be attached to ex parte evidence, and to the value of a cross-examination. Upon further reflection upon the subject, induced by the submission to us of this case, we deem it proper to reassert and to emphasize what was there said. Certainly we cannot go to the extent of saying that ex parte evidence can be relied upon to establish the improbable. It may be that, upon final hearing, Mr. Goebel's claim may be sustained, notwithstanding the improbabilities attaching to and surrounding it. It is sufficient to say here that we cannot be satisfied as to

the fact except upon clear and convincing evidence, tested by the ordeal of an intelligent cross-examination.

The further circumstance to which we refer, and which impels us to sustain the order of the court below, is that Mr. Goebel, having accomplished that for which the world was waiting in eager expectancy, that for which scientists were striving and experimenting for a quarter of a century after its discovery, that which was not only of incalculable value to the world, but of unlimited profit to the inventor, never applied for a patent for his alleged invention. That he did not was not owing to any philanthropic motive. He seems to have been a man of much mechanical ingenuity. He understood well the protection which the law yields to the deserving inventor. In regard to small matters he sought that protection. In 1885 he applied for a patent on a sewing-machine hammer, and in 1881 for certain other devices; among others, for a coil connected with his exhibit lamp. There was, however, no attempt to secure the protection of the law for an invention that, had it been known, would have startled the world and made him a millionaire. · That he should have been so careful to secure his rights with respect to trifling matters, and evince such utter disregard of his interests in a matter of great moment, challenges belief. This renders the more improbable the story of his invention. The supreme court has regarded such conduct as largely controlling. In the Telephone Cases, 126 U. S. 556, 562, 565, 8 Sup. Ct. 778, in commenting upon the conduct of Mr. Drawbaugh with respect to his alleged anticipation of the Bell telephone, his failure to apply for letters patent therefor, and his obtaining letters patent upon other and less important matters, the court observes that:

"It becomes important to consider the conduct of Drawbaugh with reference to his alleged invention during these twenty years of eventful history in relation to the discovery and use of telephones. * * * No man of his intelligence, with or without the enthusiasm upon the subject which it is said he possessed, could have remained silent under such circumstances. * * * He was silent so far as the general public were concerned, when, if he had really done what those witnesses now think he did, he most certainly would have spoken. There is hardly a single act of his connected with the present claim from the time he heard, before going to Philadelphia, that somebody else had invented a telephone, which was on exhibition at the Centennial, that was not entirely inconsistent with the idea even then of a complete discovery or invention by himself which could be put to any practical use."

In Barbed-Wire Patent, 143 U. S. 275, 289, 12 Sup. Ct. 443, 450, the court observe:

"If Morley regarded this fence of any value, he would have applied for a patent upon it, since he had in fact obtained a patent for his traveling pen, which appears to have been a comparatively worthless contrivance."

Without assuming to say that the story of this invention is untrue, and without designing to suggest what result should be reached upon final hearing, we are compelled to say that the story is surrounded by such an atmosphere of improbability that, until it shall have been thoroughly sifted and sustained upon final hearing, the claim ought not to be permitted to invade the monopoly accorded

to another for the same invention, whose claim has passed safely the ordeal of judicial scrutiny. We think, therefore, the court below well held that the patent of Mr. Edison should be protected from invasion pendente lite. The order appealed from will be affirmed.