UNITED INDURATED FIBRE CO. OF NEW JERSEY et al. v. WHIPPANY MANUF'G CO. et al.

(Circuit Court, D. New Jersey. November 17, 1897.)

1. PATENTS—PRELIMINARY INJUNCTION—PRIOR DECISIONS.

On an application for preliminary injunction, a prior adjudication in a suit against another party, sustaining the patent, after full and fair contest, on final hearing, is conclusive of the validity of the patent, unless a new defense is interposed, so forceful as to satisfy the court that, if presented in the former case, a different result would have been reached. Hence the only question open is that of infringement.

2. SAME—INFRINGEMENT.

Reissue No. 10,282 (original No. 267,492), for a process of rendering paper or pulp articles hard, tough, and impervious, and the Keyes patent, No. 342,609, for a pail, or other similar article, made of wood pulp, or similar fibrous material, *held* valid and infringed, on motion for preliminary injunction.

3. SAME—PRELIMINARY INJUNCTION—HARDSHIP TO DEFENDANT.

An injunction will not be denied on the ground of hardship to defendant company, where it appears that the organizers and managers thereof were both prominently connected with another company at a time when it was adjudged an infringer of the same patent in an earlier suit.

This was a suit in equity by the United Indurated Fibre Company of Jersey City and others against the Whippany Manufacturing Company and others for alleged infringement of certain patents. The cause was heard on a motion for preliminary injunction.

Fred P. Fish and Charles Neave, for the motion.

M. B. Philipp, M. H. Phelps, and David Kay, Jr., opposed.

KIRKPATRICK, District Judge. The bill filed in this case asks for an injunction against the Whippany Company and others, the defendants therein, prohibiting the manufacture by them of indurated fibre ware, because the method used by them infringes upon the rights of the complainants, as protected by patent No. 267,492 (reissue No. 10,282), and also because in the forming of the articles the defendants infringe claim 7 of another patent issued to Martin L. Keyes (No. 342,609), both of which patents are held by the complainants under valid assignments. The claims said to be infringed are as follows:

Patent No. 267,492 (reissue No. 10,282): "Claim 1. The process of rendering paper or paper-pulp articles hard, tough, and impervious; consisting in first saturating the said article in thickened drying oil, or oil and gums, at substantially the temperature specified, in such manner that the surface will be free from an oil film, and then exposing said article to air and like temperature, as set forth. Claim 2. The process of rendering paper or paper-pulp articles hard, tough, and impervious: consisting of saturating said articles in a hot bath of oil, and freeing the surface from films of oil, and subsequently indurating the saturated articles. Claim 3. The described article of paper or paper pulp, having its pores filled with hardened linseed oil, or linseed oil with a proportion of gums, substantially as set forth."

Patent No. 342,609: "Claim 7. As a new article of manufacture, a pail, or other similar article, formed from wood pulp, or other similar fibrous material, having an annular projection or chine around its bottom, said chine being formed with a uniformly laminated structure, substantially as described."

The defenses interposed are invalidity of patent, prior use, and non-infringement.

It appears from the record that in 1892 the complainants herein brought suit in this court against the New York Wood-Fibre Company for an infringement of the same claims of the patents charged to be infringed in this case. Some of the parties hereto were interested in the management of the business of the defendants in said suit. The case was fully and fairly presented to the court by able counsel. In it reference was made to many of the patents now relied upon as being anticipatory. There is no suggestion on the record of fraud or collusion. Upon a final hearing the validity of both of the above patents was adjudged. Under these circumstances, upon an application for a preliminary injunction the question of the validity of the patent is not at issue (American Paper Pail & Box Co. v. National Folding-Box & Paper Co., 2 C. C. A. 165, 51 Fed. 229), unless a new defense is interposed, so forceful as to satisfy the court that, if presented in the former case, a different result would have been obtained. The reason for this rule is stated in Electric Manuf'g Co. v. Edison Electric Light Co., 10 C. C. A. 106, 61 Fed. 834, to be "that an adjudication in the case of a patent is not only a judgment inter partes, but is a judicial construction of a grant by the government, and, in a broad sense, deals with and determines the rights of the public." I have carefully considered the patents, which were not then considered, and fail to find in them anything which satisfies me that, if they had been urged in the former suit, it would have induced the court to reach a contrary conclusion. Giving that weight to the prior adjudication to which it is entitled (Purifier Co. v. Christian, 3 Ban. & A. 42, Fed. Cas. No. 307; Patent Co. v. Adams, 77 Fed. 191), I regard as established, for the purposes of this motion, the validity of the claims of the complainants' patents which are said to be infringed, and that the only question to be determined by the court at this time is the one of infringement (Manufacturing Co. v. Hickok, 20 Fed. 116).

The invention of the complainants' patent No. 267,492 relates to an improvement in articles made of paper stock. Such articles were not new in the art. They had been made with indifferent success for many years. The object of the inventor was to improve such articles in respect to hardness and strength, and render them impermeable to all that class of liquids to contact with which they are subjected. To this end, he adopted a new step by step process, which is clearly set out in the specification of his patent. It consisted: (1) Of heating the article made of paper pulp to the highest degree of heat to which it might safely be subjected. (2) The immersion of the article into prepared linseed oil, reduced by boiling or by agitation to a thick, semiliquid mass, which oil has been kept at high temperature, and allowing the article to remain in the oil until it has absorbed so much and no more oil than by subsequent treatment may be converted into a hard, resinous substance, cementing the fibres of the pulp. Care must be taken that no film of oil, which is the effect of oversaturation, remains on the surface of the article. (3) Submission of the article in free contact with a heat sufficient to con-

vert the oil which has been absorbed in the pores into a solid throughout the article.    The patent having been declared valid, we must assume that the process was new, and the result attained an improved article, which was an advance in the art.    The record discloses the fact that many persons engaged in the manufacture of paper pulp articles abandoned old processes, and accepted licenses to operate under that described in complainants' patent.    The defendants are engaged in the manufacture of paper pails, or pails formed from paper pulp.    Their process consists in (1) thoroughly drying the formed pail in an oven, the temperature of which varies from about 125 to 170 deg. Fahrenheit; (2) the pails are then immersed in an oil bath, heated to a temperature of 168 deg. Fahrenheit, for from three-quarters of a minute to one minute and one-half; (3) then baked at a temperature of 162 to 168 deg. Fahrenheit.  The temperature used appears from the testimony to be the maximum degree of heat which can be used without injury to the defendants' article.    The novelty of the complainants' process consisted of the orderly arrangement of the steps which contributed to the desired result.    The process of the defendants is, in a modified form, that of the complainants' patent. It differs from that of complainants in the degree of heat to which the articles are subjected before immersion in the oil bath, the temperature of the bath, and the degree of heat to which they are afterwards subjected.    The complainants' patent is not limited to any specified degree of heat.    It recommends that, to produce the best result, the article shall be heated to the highest degree to which it may be safely subjected.    The object of the preliminary heating of the article in its pulpy state is to drive out the air and water with which it is saturated, and prepare it to receive the oil in which it is afterwards immersed.    To accomplish the same result by changing the thickness of the pulpy article, and using a lower temperature for a longer time, is not to alter the first steps of the process.    So, too, with the other differences which have been alluded to.    I regard them as mere evasions of the patent, upon which the court now looks favorably.    Palmer v. Patterson, 70 Fed. 490.    The testimony of one of defendants' witnesses discloses the fact that "any greater temperature than that used by the defendants would be injurious to the goods," and so they come within the specifications of the patent, and use "the highest amount of heat to which the article may be safely subjected."    The question is not merely one of temperature.    The process may be the same, though the temperatures differ.    Tilghman v. Proctor, 102 U. S. 707.    Another point of difference is in the oil used for the bath.    That specified in the complainants' patent is "boiled linseed oil, or linseed oil thickened by the known process of agitation in the presence of light and air"; and in the claim of the patent it is described as "thickened drying oil, or oil and gums." The oil used by the defendants is what is known to the trade as "London Oil."    This oil is a drying oil, yielding resin upon oxidation, and is a well-known member of the class of which linseed oil is the type.    The object to be obtained by the immersion in the bath is to saturate the pores of the article with an oil which, uniting with the vegetable fibre of which the pulp is composed, converts the whole, by

oxidation, into a tough, elastic, resinous substance. In the case against the New York Wood-Fibre Company, to which reference has been made, the oil bath consisted of a mixture of London oil and fish oil, the proportions of each not being given. The results attained in all the cases are similar, the means of attainment being chemical equivalents. I am therefore of the opinion that by the adoption of the process of complainants' patent, and the use of its equivalents, the defendants have infringed claims 1 and 2 of patent No. 267,492 (reissue No. 10,282), and by so doing have produced the same "article of paper or paper pulp, having its pores filled with hardened linseed oil, or linseed oil with a proportion of gums, substantially as set forth," thereby infringing the third claim of said patent.

It remains but to consider the seventh claim of the Keyes patent, No. 342,609, relative to the "pail formed of wood pulp having an annular projection or chine around the bottom, formed with a uniformly laminated structure." For the same reasons given in regard to the Carmichael patent, I will, for the purposes of this motion, consider the seventh claim of the Keyes patent, No. 342,609, established. In the suit of these complainants against the New York Wood-Fibre Company, claim 7 of the Keyes patent, No. 342,609, was held to be infringed by the article manufactured by that company. The process used and the article manufactured by the defendants in this case are admittedly similar to those used and manufactured by the New York Wood-Fibre Company in the former suit. The pail made by the New York Wood-Fibre Company having been adjudged to be an infringement of the claim of the patent under consideration, I therefore hold that the similar pail made by similar process likewise infringes.

It has been urged upon the court that a great hardship will be imposed upon the defendants if a preliminary injunction be issued against them. The record discloses that W. W. McEwan, who was one of the incorporators of the defendant company, and Caleb H. Valentine, the superintendent of defendants' factory, were both prominently connected with the New York Wood-Fibre Company at the time injunction issued against it at complainants' suit. The organizer and manager of defendant corporation entered upon their present enterprise with a full knowledge of complainants' rights, and they are not in a position to ask the court to stay its hand in affording to the complainants the full measure of relief to which they are entitled. The preliminary injunction prayed for in the bill should be granted.