MENASHA WOOD SPLIT PULLEY CO. et al. v. DODGE et al.

(Circuit Court of Appeals, Seventh Circuit. November 29, 1897.)

No. 399.

PATENTS—PRELIMINARY INJUNCTION—SEPARABLE PULLEYS.
  The Dodge & Philion patent, No. 260,462, for an improvement in separable pulleys, considered on appeal from an order granting a preliminary injunction, and held, that infringement was not so clearly shown as to justify the court below in granting the injunction.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

This was a suit in equity by William W. Dodge, Melville W. Mix, and the Dodge Manufacturing Company against the Menasha Wood Split Pulley Company and others, for alleged infringement of a patent. The circuit court made an interlocutory order granting a preliminary injunction, and the defendants have appealed therefrom.

William F. Vilas, for appellants.

John Hill and Lysander Hill, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

SHOWALTER, Circuit Judge. This is a suit in equity to enjoin the alleged infringement of letters patent No. 260,462, granted to Wallace H. Dodge and George Philion on July 4, 1882, for an improvement in separable pulleys. Complainants became owners by virtue of assignments made by the patentees. A motion supported by affidavits was made for a preliminary injunction, an order for the injunction followed, and defendants have appealed from that order.

The validity of the patent in suit was sustained by District Judge Sage of the Sixth circuit in the case of Dodge v. Post in an elaborate opinion (76 Fed. 807), which is set forth in full in the record. The question here concerns the matter of infringement. The diagrams which form part of the specification of the patent in suit are shown below.

The specification is as follows:

"Be it known that we, Wallace H. Dodge and George Philion, of Mishawaka, in the county of St. Joseph, and state of Indiana, have invented a new and useful improvement in separable pulleys, and we do hereby declare that the following is a full and accurate description of the same: Heretofore separable pulleys have been made in parts fitted and bolted together prior to being bored and turned, and therefore they were fitted to the shaft and secured thereon in ordinary way. Such pulleys are not interchangeable as to shafts of different diameters. Our improvement obviates—First, the old and imperfect mode of fastening the pulley in place on the shaft; and, second, renders the same pulley readily applicable to shafts of different diameters, or as a fast or loose pul-

ley. In addition to the above, we propose to make our pulleys of wood, and in a structural way which will greatly cheapen and add to their efficiency. We are aware that wooden pulleys have heretofore been made, and therefore do not claim such broadly, but only with relation to the structural methods hereinafter described. That others may fully understand our invention, we will particularly describe it, having reference to the accompanying drawings, wherein Fig. 1 is a perspective of our pulley. Fig. 2 is a section of the same transverse to the axis. Figs. 3 and 4 represent the separable spool-hub. A represents our pulley, and the mode of structure is as follows: We first form up of segments a, b, c, a ring, the parts being glued and nailed or doweled together. This ring forms the central part of the pulley, and, after being turned, it is cut in halves transversely. The spoke and hub bar, B, is prepared either by properly fashioning a wooden stick in the lathe, and afterwards slitting it in two, as shown, or by fitting together properly two separate bars. These parts are secured at their ends to the ends of the ring segments in some proper and efficient manner, and for this purpose we prefer the dovetail, as shown. The parts of the bar, B, are so placed in the ring segments that they will not touch each other at the axis or hub of the wheel when the ring segments are placed in position. The clamping bolts, G, G, are then inserted with pieces of thin wood or veneering, I, between the parts of the bar, B, to prevent them from springing together under the action of the bolts while being turned in the lathe. The exterior rim segments, d, e, f, g, are then applied, and secured by glue, nails, or other suitable means, and cut transversely in line with the previous cut. After this is done, the pulley is turned on its face and edges, and the central part of the spoke arm or bulb, h, is bored truly central. This bore may be adapted exactly to a shaft, S, of some definite size, and the pulley may be applied thereon, the pieces of veneering being removed, so that the bolts, G, may then draw the parts B forcibly upon the shaft, and thereby clamp the pulley hub against said shaft, and in that way obtain an adhesion due to area of surfaces in contact. This is a much stronger adhesion than is possible where the area of contact is confined to the point of a set screw on one side and a small segment of the hub on the opposite side. This method of securing a pulley upon a shaft is equally applicable to wooden or metallic pulleys. The use of separable pulleys is largely for temporary purposes, and it is therefore sometimes extremely inconvenient to properly fit a pulley to a shaft for which it is not adapted. To obviate this difficulty, we employ removable thimbles, H, made also in halves, and these can be provided in sets or quantities adapted to shafts of various sizes; or, if necessary, at small expense, one of these thimbles can be bored to fit a shaft of any unusual diameter, so that no change whatever in the pulley will be required. The tension of the same bolts, G, G, fastens and clamps the pulley to the split thimble, and the thimble to the shaft. This method of adapting a pulley to shafts of various sizes is also equally applicable to metallic or wooden separable pulleys. If it is desired to use one of these pulleys as a loose pulley, the thimble, H, should not be split, but fitted to and placed upon the shaft in the usual way, and the pulley then applied to the thimble, as described."

When a pulley has been completed on the method of the patent, and then placed on a shaft for use, the two halves are held together by the bolts, G. If the nuts be taken from these bolts, each half of the pulley parts from the other. Hence the designation "separable pulleys." The structure of the pulley, and the mode of operation whereby it is made fast upon the shaft, will be understood by reference to the two parts of the pulley when not joined together, rather than to the pulley as a whole when fixed on the shaft. The patentees say: "We are aware that wooden pulleys have heretofore been made, and therefore do not claim such broadly, but only with relation to the structural methods hereinafter described." The ring formed by the segments a, b, c, "after being turned, * * * is cut in halves transversely." The "spoke and hub bar" is of two pieces. Each piece is fitted into its half of the severed ring, so that, when the two

halves of the ring are again joined, they and the halves of the spoke bar contact or touch at the meeting ends, the parts of the spoke bar being separated at all points between the contacting ends of the ring. The exterior ring segments, d, e, f, g, are then put on. These segments must have been previously cut in halves, so that the plane across the meeting ends will be an extension of the plane across the meeting ends of the ring halves, or else they must have been put on with the meeting ends of the ring halves parted to at least the width of the kerf which will be made in thereafter sawing the two halves asunder. The two halves of the pulley are then brought together against the solid interposed strip, I, so that they touch at the meeting ends of the rim. Held in this position by the bolts, G, while the meeting ends of the rim are in touch, and all flexion towards each other of the divided parts of the spoke bar is prevented by the solid interposed strip, the shaft hole is cut "truly central," and the pulley "turned on its face and edges." The bolts, G, are then removed, the portions of the strip, I, still held fast under pressure of the bolts after the shaft hole was cut, drop out, each completed half parts from the other, and the two halves are ready to be placed upon a shaft, and there combined into a pulley for use; ready, in other words, to be put in the stock of the manufacturer for sale. Since the shaft hole was cut to fit the shaft (or the inclosing thimble) while the meeting ends of the rim were in contact, and while the springing together of the spoke arms was prevented by the solid strip, I, it seems to follow that the meeting ends of the rim will touch when the two halves are placed upon the shaft, and before the tension of the bolts, G, is brought to bear.

Counsel for appellees say in their brief, at page 17:

"All wood pulleys which are made whole and sawed in two are and must be under those conditions, when first placed upon their shaft, separated at the rims by the thickness of the saw kerf, and must be clamped to bring the rims together. The Dodge pulleys never are made in any other way, and the defendants get this feature from the Dodge Company. These facts will be fully shown at the final hearing."

But this is apparently not the method of the patent. I quote from the testimony of Mr. Dayton, the principal expert for appellees, "the patent referred to" being the patent in suit, and certain words used by the witness being here italicized:

"The means through which this principle of extended contact and distributed compression are attained in the invention of the patent referred to consists in a two-part bushing or thimble made of wood, or its equivalent, adapted to fit at its inner surface to the shaft and at its outer surface to the pulley hub, in combination with the divided pulley, *which meets at the rim when placed about the shaft* and bushing, and the hub members of which are adapted to *thereafter* move towards each other, whereby, under the compressing strain of suitable clamping bolts and nuts, the pulley hub may be compressed upon the bushing, and the bushing compressed upon the shaft."

Upon the method described in the specification, the two halves of the pulley, when placed upon the shaft, and before the bolts, G, begin to act under pressure of the nuts, seem to be in contact or conjunction at their meeting ends; and, as will be seen later, this initial contact is, in a measure, functional in determining the kind or method of

pressure whereby the hub is held upon the shaft. In Dodge v. Post, District Judge Sage said, speaking of the result attained by the method of the invention in suit:

"To accomplish this result there must be compression at the shaft and contact at the rim, and the inner side of the divided spoke bar must be separated from rim to rim."

Conceiving the pulley of the patent in position on a shaft ready for operation, both the shaft and the spoke bar being horizontal, the latter having the nuts of the bolts, G, on the under side, what are the forces which hold the pulley in place on the shaft? Let one-half of the upper spoke bar be thought of as a lever. The two heads of the bolts, G, are the fulcrum. The end of the long arm is at the place of impact between the meeting ends of the rim, and the end of the short arm is immediately above the shaft. In other words, while there is to a degree "extended contact and distributed compression," yet the strong and direct pressure is on the extreme upper and lower surfaces of the shaft. This clamping effect results in part from the tension of the bolts against the contact between the long arms of the two levers at their ends; in other words, against the contact between the two meeting ends of the rim. The first claim is as follows:

"A separable pulley, whereof, when the meeting ends of the rim are in contact, the meeting faces of the spoke bar and hub are slightly separated, as described, combined with clamp bolts, G, whereby said hub is clamped upon the shaft, in the manner set forth."

The subject-matter of the patent, I should say, is not a pulley on a shaft in operation, or ready for operation, but the two halves completed on the method set forth in the specification, and ready to be put on a shaft, and there combined into a pulley by the action of the bolts, G. It is, apparently, not the function of the bolts, G, to bring the meeting ends of the rim into contact with each other. Said meeting ends are in contact before the tightening of the bolts commences. Being in contact, their opposition modifies the action of the bolts as already noticed. The contact between the meeting ends of the rim seems to be, when the claim is read in the light of the specification, initial. It is not a result produced by the conjoint action of other factors in the claim. The contact between the meeting ends of the rim is a factor in the combination claimed. The result, namely, the holding or fixing the pulley on the shaft, is the product of all the factors in the combination; the initial contact between the meeting ends of the rim being one.

Appellant corporation is also a manufacturer of separable wooden pulleys. When placed initially on the shaft, the meeting ends of the two halves of a pulley made by appellants are parted. After the bolts have tightened the hub around the shaft, the meeting ends of the rim are still out of contact. Additional bolts, put through the arms of the divided spoke near the junctions with the rim, are ordinarily made use of to bring together the meeting ends of the rim. Pressure or opposition between such meeting ends when brought together is not functional in appellants' pulley towards securing the hub on the shaft. In this pulley the effect of the bolts is to bring the arms of the spoke towards each other, and to grip the shaft tightly

between opposite walls of the opening cut for the shaft in each spoke bar, and against the longitudinal tension of that portion of each spoke bar which lies between the pair of bolts on either side of the shaft, and constitutes part of the hub, but which was not severed in cutting the shaft hole.   In appellants' pulley the half rims are made by bending the wood.  The half rims, as initially put on the shaft, are not full half circles.   They become such under stress of the end bolts when the meeting ends are drawn together.   Two additional spokes or braces between the rim and the hub, set at right angles to the divided spoke, are ordinarily used by the appellants.   The witnesses for appellants say that in the smallest size of pulley made by appellants the additional braces are not needed, and are not used; and that in such small-sized pulley, there being no room for the extra end bolts, the same are omitted, because in such pulleys the bolts near the hub operate first to fasten the pulley on the shaft, and, by further turning of the nuts, to bring into touch the meeting ends of the rim.   On the showing of this record, contact between the meeting ends of the rim is not, in appellants' pulley, functional as a factor operative in any combination having for result the holding or fixing the pulley on the shaft.   Nor, in appellants' mechanism, are there any bolts, G, functional as clamping the hub on the shaft when or after the meeting ends of the rim are in contact, and by a clamping action, which is the resultant of a combination wherein such contact between the meeting ends of the rim is a factor.   The learned judge in the circuit court said in his opinion:

"The contention is that the claims of the patent make a distinctive feature that the meeting ends of the rim must be in contact at the outset, and necessarily so, to make effective the process of clamping the hub to the shaft; that, on the other hand, the defendants placed their halves of the pulleys together about the shaft, with the ends of the rims not in contact, even when tightly clamped to the shaft, and then cause 'the two halves of the pulley to bodily approach each other,' and by means of the clamps and bolts accomplish what they call the 'grip method' of holding the pulley to the shaft, 'instead of the compression method of the patent,' thus utilizing the openings at the rim to make their process effective. This distinction is set forth in detail in several affidavits, and was ingeniously argued and illustrated by models at the hearing. It is manifest, however, that the rims are brought into contact before the process of attachment is completed, otherwise the pulley would be defective. At some stage, therefore, all of the methods and features described in the patent are employed here. The defendants may have added another feature,—may have improved upon the device of the patent, as they asserted,—but that does not relieve from nor authorize infringement."

The words "whereby said hub is clamped upon the shaft" seem to be descriptive of the mode of operation or method of the combination claimed.   The two halves of a pulley, constructed "in the manner set forth," or in some analogous manner, so that, "when the meeting ends of the rim are in contact, the meeting faces of the spoke bar and hub are slightly separated, as described," seem to be "combined with clamp bolts, G, whereby said hub is" then "clamped upon the shaft in the manner set forth."   On this understanding, the function of the bolts, G, is to press towards each other the two parts of the hub after the rim ends are in contact and against the antagonism of the rim ends.   The question here is:.  Does this claim comprehend any and every

separable wooden pulley in which, after being fixed upon a shaft, ready for use, by means of bolts through a divided spoke bar, "the meeting faces of the spoke bar and hub are slightly separated," and the meeting ends of the rim are in contact, regardless of the structural method of such pulley as apparent before its halves were bolted together over the shaft? Contact at the meeting ends of the rim appears to be a factor in each of the claims in controversy, the claim not heretofore mentioned being the same as the one already quoted, but with the addition of the "separable split thimble interposed between said shaft and pulley." As the case is now presented to this court, I think we are hardly at liberty to say that this contact at the meeting ends of the rim need not appear when the two halves of the pulley are initially placed upon the shaft, and before the pressure of the bolts, G, commences. It is the ruling of this court that the order appealed from be reversed, with the direction that the same be vacated, and the cause, so far as brought to this court by this appeal, is remanded.

WOODS, Circuit Judge (concurring). I agree that the motion for a preliminary injunction should have been denied, because, as interpreted by the expert whose affidavit was presented in support of the motion, the patent in suit had not been infringed. I am not convinced that that interpretation was right. There is nothing in the specification or claims which explicitly requires that the meeting ends of the rim of the pulley shall be in contact before the tension of the bolts shall have been brought to bear upon the two parts of the bar. If not forbidden by the prior art, I think it would be fair to read the claims as having reference to a pulley in place upon a shaft ready for use.

JENKINS, Circuit Judge (concurring). I concur in the result, but upon these grounds: Assuming, for the purpose of a preliminary injunction, that the patent is valid, as the court rightfully did (Electric Light Manuf'g Co. v. Edison Electric Light Co., 18 U. S. App. 637, 10 C. C. A. 106, and 61 Fed. 834), it still remained that, to warrant a preliminary injunction, the fact of infringement should be made out beyond reasonable doubt (Standard Elevator Co. v. Crane Elevator Co., 9 U. S. App. 556, 6 C. C. A. 100, and 56 Fed. 718). There is here so much of doubt with respect to the proper construction of the claims of the patent and of their infringement that it is needful to have an investigation into the prior art to determine the exact limitation of the claims, and to have "the searchlight of an intelligent cross-examination" to determine conclusively the fact of infringement.